IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01747-NRN

T.L.,[1]

    Plaintiff,

v.

LELAND DUDEK,[2] Acting Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

    The government determined that Plaintiff T.L. was not disabled for purposes of the Social Security Act. AR[3] 27. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). ECF No. 14.

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Martin O'Malley is the named Defendant in the Complaint as he was the Commissioner of Social Security at the time the Complaint was filed. Leland Dudek currently serves as the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Leland Dudek, as Commissioner O'Malley's successor, "is automatically substituted as a party." *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[3] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. ECF No. 9 through 9-9.

**<u>Standard of Review</u>**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence. *See Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) ("If [plaintiff] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence.").

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007).

If the correct legal standards were applied and substantial evidence supports the findings of the Commissioner, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## **Background**

At the second step of the Commissioner's five-step sequence for making determinations,[4] the ALJ found that Plaintiff had the following severe impairments: "status post COVID-19 infection with respiratory failure; asthma; [and] chronic obstructive pulmonary disease (COPD)." AR 16. The ALJ deemed Plaintiff's pancreatitis and obesity to be non-severe. AR 17. She further stated that Plaintiff did not allege that any mental health issue contributed to his disability. *Id.*

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. AR 17–18. Specifically, the ALJ evaluated Plaintiff's respiratory conditions under the section 3.00 listings for respiratory

---

[4] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

3

impairments and determined that the record did not document medical findings equivalent in severity and duration to any of the listed findings. As to listing 3.02 in relation to Plaintiff's COPD, the ALJ found that the listing was not met "because the evidence does not establish listing level measurements of respiratory impairment on pulmonary function tests or evidence of exacerbations. There is also no evidence of COPD exacerbations causing multiple hospitalizations." AR 18. The ALJ then considered listing 3.03 in evaluating Plaintiff's asthma and found that the "paragraph A" criteria of the listing were not met "because the record does not demonstrate evidence of chronic asthmatic bronchitis characterized by a listing level impairment in forced expiratory volume," and that the "Paragraph B" criteria were not met because the record did not establish exacerbations or complications requiring three hospitalizations (lasting at least 48 hours) within a 12-month period and at least 30 days apart. *Id.*

Because she concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: The claimant can lift 25 pounds occasionally and 10 pounds frequently. He can sit, stand, and walk for 6 hours each in an 8-hour workday, with normal breaks. He should not be asked to perform tasks in extremes of cold and should have only minimal (extremely brief) exposure to such things as fumes, odors, dusts, and gases. Within these limitations, the claimant is able to sustain a routine and maintain attendance.

*Id.*

In formulating the RFC, the ALJ noted that Plaintiff alleged at the hearing that he is disabled due to Covid-19-related pulmonary conditions, which have caused significant problems:

> [Plaintiff] reported that he has to visit an emergency department one to two times per month due to his respiratory issues. He also described daily episodes of shortness of breath and a need to take rest breaks every 15 to 20 minutes when attempting activity. He reported that he has supplemental oxygen that he uses at night and as needed during the day. [Plaintiff] testified that he is able to do some walking and uses public transportation (a bus) for errands such as going to the grocery store.

AR 19.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Although Plaintiff was hospitalized on March 30, 2020 for acute hypoxic respiratory failure secondary to COVID-19 and intubated until April 4, 2020 (he also developed a pulmonary embolism during the hospitalization), the ALJ notes that his symptoms steadily improved such that in early 2022, he reported "walking 20 to 30 minutes [at a] time and indicat[ed] that, while he had some ongoing shortness of breath walking on inclines, he was able to do this walking without supplemental oxygen." AR 19–20. Later that year, while Plaintiff still used supplemental oxygen at night and his inhaler as needed, he was also walking 30 minutes daily in Aspen without difficulty and stated that he "wants to get back to the gym and back to work." AR 20.

The ALJ's RFC is consistent with the medical opinions of State agency consultants Alicia Blando, M.D., and Alan Coleman, M.D. *Id.* Conversely, the ALJ found the "severe levels of limitations" suggested by Plaintiff's treating provider, Sarah Jolley, M.D., unpersuasive and "not consistent with the significant improvement in respiratory functioning shown over the course of the alleged disability period, including the later

5

evidence of mild pulmonary function testing findings, the ability to walk at elevation without difficulty, and the relatively stable asthma." AR 21.

The ALJ found that Plaintiff was capable of performing past relevant work as a caterer helper, a light exertional job. *Id.* The ALJ further found that that Plaintiff could perform other light exertional jobs that exist in significant number in the national economy, including mail clerk, routing clerk, and merchandise marker. AR 22. Accordingly, Plaintiff was deemed not to have been under a disability from March 30, 2020, through October 31, 2023, the date of the decision. AR 22–23.

## Analysis

Plaintiff argues that the ALJ's unfavorable decision should be reversed and remanded on three grounds. First, Plaintiff claims that the ALJ's evaluation of the medical evidence and medical opinions was deficient under the applicable regulations. Second, Plaintiff asserts that the ALJ's decision does not reflect a reasonable evaluation of Plaintiff's subjective statements. Finally, Plaintiff argues that the ALJ's step four and step five findings are not supported by substantial evidence due to her errors in assessing Plaintiff's RFC. The Court will address each in turn.

I. **The ALJ's Assessment of Medical Source Opinions**

    a. **Applicable Law**

In assessing a claimant's RFC, the ALJ must address medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015). Effective March 27, 2017, new regulations changed the procedures and standards for evaluating evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a),

416.920c(a). Under the old regulations, the opinions of treating sources were generally entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating-source opinions were given "controlling weight" when they are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent" with other substantial evidence in the record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c abrogate the treating physician rule for claims filed on or after March 27, 2017. The Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner considers the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability examines how closely connected a medical opinion is to the objective medical evidence." *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *3 (10th Cir. Dec. 23, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not

7

supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain her approach with respect to these first two factors when considering a medical opinion, but she is not required to expound on the remaining three unless she finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

### b. The ALJ's Assessment of the Medical Opinions

In this case, Plaintiff's treating physician, Dr. Jolley, endorsed restrictions that would limit Plaintiff to less than sedentary work. Dr. Jolley opined that Plaintiff could

> sit for 8 hours, and stand/walk for 3 hours in an 8-hour workday; needed to be able to shift positions at will from sitting, standing, walking; could rarely lift and carry less than 10 pounds and never more than that; could rarely climb ladders and stairs, and could frequently twist, bend, and stoop; that he had psychological factors affecting his physical condition, that his physical and mental impairments were reasonably consistent with his symptoms, that he was not a malingerer, would frequently experience symptoms that would interfere with his attention and concentration for even simple work tasks, and that he likely would be absent from work more than four days per month.

ECF No. 10 (citing AR 2019–20).

As noted above, the ALJ found Dr. Jolley's opinion to be unpersuasive:

> The severe levels of limitation suggested by Dr. Jolley, and particularly the suggested limitations in standing and walking, in lifting and carrying, and the absenteeism are not consistent with the significant improvement in respiratory functioning shown over the course of the alleged disability period, including the later evidence of mild pulmonary function testing findings, the ability to walk at elevation without difficulty, and the relatively stable asthma.

AR 21.

Plaintiff primarily faults the ALJ for rejecting Dr. Jolley's opinion without considering the purpose of Plaintiff's treatment or Dr. Jolley's area of medical specialization, and instead relying on the opinions of non-examining state agency medical consultants. There are several problems with this argument.

First, both the purpose of a provider's treatment and her area of specialization are factors that an ALJ "must consider . . . but is not required to explicitly discuss." *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. Oct. 28, 2022). Accordingly, there is no discernable error in the ALJ's failure to specifically address these factors, and Plaintiff does not contend that the ALJ did not to discuss the two most important factors—supportability and consistency—which *must* be adequately explained in the decision.

Second, although Plaintiff insists that, "in contrast to the credentials of Dr. Jolley, the medical specialty codes for Drs. Bland and Coleman do not reflect that they are specialists or experts in the evaluation and treatment of patients with Long Covid," the governing regulations expressly state that state agency physicians "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). The ALJ was entitled to rely on their medical opinions if she found them persuasive; i.e., supported by the medical evidence and consistent with the record. She did so and adequately explained why. The Court is not empowered to reweigh evidence or second-guess that decision on appeal.

Moreover, Plaintiff notes that Dr. Jolley is board certified in Internal Medicine in Pulmonary Disease and Critical Care Medicine and an expert in the long-term effects of Covid-19. However, this is evidence provided by counsel that is not found in the record.

9

In any event, Dr. Jolley's supposed "superior qualifications" and her status as Plaintiff's treating physician no longer imbues her medical opinion with any greater weight, much less controlling weight. The ALJ was within her rights to reject it as unpersuasive.

Plaintiff also claims that the ALJ improperly evaluated the medical evidence. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). The Court does not find that the ALJ engaged in inappropriate cherry-picking.

Plaintiff argues that the ALJ and the state agency medical consultants ignored the fact that he still requires the use of supplemental oxygen. However, the ALJ noted in her decision that Plaintiff used supplemental oxygen at night, *see* AR 20 ("[T]reatment record . . . shows a severe respiratory illness that resulted in hospitalization and causes some ongoing respiratory issues including a need for supplemental oxygen at night . . . ."), as did both physicians, *see* AR 67, 73, 123–24, 130. Plaintiff concedes that he mostly used it at night. This is important because RFC represents "the most [that the claimant] can still do [in a work setting] despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). As the Commissioner notes, the evidence does not suggest a need for oxygen in a work setting and therefore does not undermine the RFC.

Plaintiff also objects to the ALJ's characterization of medical findings or her failure to discuss certain evidence. But it is well-established that an ALJ "is not required

10

to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Here, her conclusion that Plaintiff's symptoms had improved such that he can perform a substantial range of light exertional level work with certain limitations is supported by substantial evidence and will not be disturbed.

In sum, the Court finds that the ALJ did not err is assessing the medical opinion evidence.

## II. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff next argues that the ALJ did not engage in a proper credibility analysis. Plaintiff claims that the record shows that he worked hard to improve his pulmonary capacity and regain his stamina, yet he continued to experience shortness of breath, reduced exertional tolerance, stamina, and fatigue. According to Plaintiff, the ALJ failed to consider these difficulties in her RFC determination.

Under Social Security Ruling ("SSR") 16-3p, the ALJ is required to

> explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions. [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record.

2017 WL 5180304, at *8 (Oct. 25, 2017). In evaluating a claimant's symptoms, it is not enough for an ALJ "to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id.* at *10. Rather, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Kepler v.*

11

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.").

Under this rubric, 20 C.F.R. § 404.1529(c)(4) gives the ALJ a framework with which to evaluate a claimant's statements concerning his symptoms:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added); *see also* SSR 16-3p, 2017 WL 5180304, at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). If the claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms "are inconsistent with the objective medical evidence and the other evidence, the ALJ must evaluate whether the claimant's "symptoms are less likely to reduce . . . his capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." *Id.* at *8; *Luthy v. Saul*, No. 17-cv-2206-PAB, 2020 WL 6938300, at *6 (D. Colo. Nov. 25, 2020) (same). So long as the ALJ sets forth the specific evidence she relies upon in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Contrary to Plaintiff's suggestion in his brief that the ALJ made no reference to his hearing testimony, the ALJ summarized Plaintiff's testimony regarding his respiratory symptoms:

> The claimant alleged at hearing that he is disabled due to pulmonary conditions. He described a history of a COVID-19 infection resulting in hospital admission in an intensive care unit (ICU) and stated that he has had significant respiratory problems since that infection. He reported that he has to visit an emergency department one to two times per month due to his respiratory issues. He also described daily episodes of shortness of breath and a need to take rest breaks every 15 to 20 minutes when attempting activity. He reported that he has supplemental oxygen that he uses at night and as needed during the day. The claimant testified that he is able to do some walking and uses public transportation (a bus) for errands such as going to the grocery store.

AR 19.

However, the ALJ concluded that these "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id.* As noted above, the ALJ went on to cite evidence in the record indicating that Plaintiff's respiratory functioning had steadily improved since March 2020, "including the later evidence of mild pulmonary function testing findings, the ability to walk at elevation without difficulty, and the relatively stable asthma." AR 21. This constitutes specific evidence the ALJ relied upon in evaluating the consistency of the claimant's subjective complaints with other evidence. *See Keyes-Zachary*, 695 F.3d at 1167. Plaintiff no doubt disagrees with the ALJ's reasoning, and perhaps the Court would have come to a different conclusion, but "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence," *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted).

13

### III. The ALJ's Step Four and Five Analysis

Finally, Plaintiff claims that the ALJ's step four and step five findings are not supported by substantial evidence due to her errors in assessing Plaintiff's RFC. Because the Court does not find any the ALJ committed any reversible errors in determining Plaintiff's RFC, this argument is unavailing.

### Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED**.

Dated this 9th day of May, 2025.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge

14